James T. FORBES, Plaintiff,

v.

**RHODE ISLAND BROTHERHOOD OF CORRECTIONAL OFFICERS,** and Kenneth Rivard, Individually and in His Capacity as Grievance Chairman, Rhode Island Brotherhood of Correctional Officers, Defendants.

C.A. No. 94–0035L.

United States District Court, D. Rhode Island.

April 23, 1996.

George E. Babcock, M. George Carvalho, Providence, RI, for Plaintiff.

Gerard Paul Cobleigh, Cobleigh, Watt, Rock & Giacobbe, Warwick, RI, for Defendants.

## DECISION AND ORDER

LAGUEUX, Chief Judge.

This matter is before the Court on the motion of defendants, the Rhode Island Brotherhood of Correctional Officers (the "Brotherhood") and Kenneth Rivard ("Rivard"), for summary judgment pursuant to Rule 56 of the Federal Rules of Civil Procedure on the four operative Counts contained in Plaintiff's Complaint.[1] Plaintiff, James T. Forbes ("Forbes"), a former employee of the Rhode Island Department of Corrections (the "Department") and dues paying member of the Brotherhood, alleges that, because of his race, defendants failed to properly assist him in appealing the termination of his employment by the Department. Plaintiff seeks legal and equitable relief pursuant to 42 U.S.C. §§ 1983 and 1985. In addition, plaintiff brings state law claims against defendants for breach of contract, breach of the duty of fair representation, and intentional infliction of emotional·distress. For the reasons that follow, defendants' motion for summary judgment is granted in part and denied in part.

## I. Facts

The following facts are undisputed, unless otherwise noted. Forbes, a black male, began his employment with the Department as a probationary correctional officer at the Adult Correctional Institution (the "ACI") on November 20, 1988. In this position, Forbes became a dues paying member of the Brotherhood (the union for correctional officers) and was covered by the collective bargaining agreement between the Department and the Brotherhood.

The Brotherhood, an unincorporated association under Rhode Island law, utilizes free office space in a building at the ACI owned by the State of Rhode Island, and pays for none of its utility costs, except for telephone charges. Rivard is the Brotherhood's Grievance Chairman and also a correctional officer in the Department.

During Forbes' first six months with the Department, he was required to attend several counseling sessions with his supervisors due to alleged incidents of inadequate performance on the job. Wayne Carone ("Carone"), a Brotherhood official, represented Forbes at these counseling sessions. On April 26, 1989, Forbes filed a complaint against the Department with the Rhode Island Commission for Human Rights (the "Commission") in which he alleged that the Department had discriminated against him on the basis of his race with respect to the terms and conditions of his employment, in violation of R.I.Gen.Laws § 28–5–7.

On May 12, 1989, the Department terminated Forbes for alleged poor job performance. That same day Forbes spoke with the President of the Brotherhood, John Sabelewski ("Sabelewski"), who counseled Forbes to appeal his termination to the Rhode Island Personnel Appeal Board (the "Appeal Board"). Sabelewski told Forbes that he would speak with Rivard about assisting Forbes with his appeal. Soon thereafter, on May 15, 1989, Forbes amended his complaint in the action before the Commission to include the allegation that he had been terminated because of his race.

In a letter dated May 22, 1989, Rivard filed an appeal, pursuant to R.I.Gen.Laws § 36–4–42, on Forbes' behalf with the Appeal Board. In his letter, Rivard asked the Appeal Board

---

**1.** The Complaint contains a fifth Count in which punitive damages are claimed. Since Count V does not state a separate cause of action, it is hereby dismissed.

to notify him as soon as a hearing had been scheduled on the matter.

After extensive hearings, the Commission issued a decision and order on July 23, 1993, in which it found that the Department had discriminated against Forbes with respect to the terms and conditions of his employment due to Forbes' race. Around this time, Forbes contacted the Appeal Board regarding the status of his appeal. Forbes was informed that his appeal had been denied and dismissed, since no one appeared at the hearing on the matter which had been scheduled for January 17, 1991.

On January 18, 1994, Forbes brought suit in this Court. Essentially, Forbes contends that defendants intentionally failed to pursue his appeal with the Appeal Board because of his race. In Count I, Forbes alleges that by purposefully allowing his appeal to be dismissed because of his race, defendants have denied him the equal protection of the laws, as guaranteed by the Fourteenth Amendment to the United States Constitution, in contravention of 42 U.S.C. §§ 1983 and 1985. Forbes avers in Count II that defendants breached the collective bargaining agreement between the Brotherhood and the Department by failing to pursue his appeal before the Appeal Board. In Count III, Forbes claims that defendants inadequately represented him in his appeal to the Appeal Board, thereby violating the duty of fair representation. Finally, in Count IV, Forbes alleges that defendants intentionally inflicted emotional distress upon him. Forbes seeks compensatory and punitive damages and attorneys' fees and costs, as well as equitable relief.

Forbes offers the following evidence in support of his claim that defendants discriminated against him on the basis of his race. Randi Petteruti ("Petteruti"), the Appeal Board's office manager, stated in her deposition that she mailed via regular mail two copies of the notice of Forbes' hearing date to Rivard on December 13, 1990. Forbes has presented a copy of this notice dated December 13, 1990. It reads, in part:

Please be advised that the PERSONNEL APPEAL BOARD will schedule the following PUBLIC HEARING, under Chapters 3 and 4 of the Merit System Law on Thursday, January 17, 1991, at One Capitol Hill, Providence, Rhode Island 02908–5869 ... This letter, in the opinion of the Board, is sufficient notification to all parties. YOU MUST, WITHIN THREE (3) DAYS OF RECEIPT OF THIS LETTER, NOTIFY THE BOARD OF YOUR INTENT TO APPEAR ON THIS DATE, OR, A WRITTEN EXPLANATION OF THE EXTENUATING CIRCUMSTANCES WHICH PREVENT YOUR APPEARANCE. If these requirements are not met, the Board has little choice but to determine that the appeal is withdrawn or uncontested. The appeal will be dismissed, or upheld, as the situation warrants.

Forbes has also submitted a copy of a letter dated January 18, 1991, in which the Appeal Board informed Rivard that Forbes' appeal had been dismissed. The letter states:

Please be advised that a Public Hearing was scheduled in the matter of James Forbes before the Board on January 17, 1991. You failed to appear, along with the Appellant, without any explanation. Notice of this hearing was forwarded to you on December 13, 1990, and, reads in part: "YOU MUST, WITHIN THREE DAYS OF YOUR RECEIPT OF THIS LETTER, NOTIFY THE BOARD OF YOUR INTENT TO APPEAR ON THIS DATE, OR, A WRITTEN EXPLANATION OF THE EXTENUATING CIRCUMSTANCES WHICH PREVENT YOUR APPEARANCE". Since these requirements were not met, and, the Board was not duly notified of the nonappearance of Mr. Forbes, it is the decision of the Board that this appeal be denied and dismissed.

Forbes claims that, at the time he learned from the Appeal Board that his appeal had been dismissed, he was told by Petteruti that she did not send him notice of the scheduled hearing because she expected Rivard to inform Forbes of the hearing, and because she did not have Forbes' address. Forbes also contends that Petteruti told him at this time that Rivard's failure to appear at the hearing was strange, since Rivard normally contacted

the Appeal Board with respect to scheduled matters.

In furtherance of his claim of racial discrimination, Forbes presents the following statistical evidence of an alleged pattern of discrimination against blacks by defendants, based on his independent review of the Appeal Board's files. According to Forbes, since 1985, the Appeal Board has dismissed the appeals of ten members of the Brotherhood due to nonappearance on the date of hearing. Of these ten cases, Forbes alleges, the Brotherhood represented seven of the appellants, and three had obtained private counsel. Forbes states that four of the seven claimants represented by the Brotherhood were black, one was white, and the race of the remaining two could not be determined. Forbes submits that this comparative evidence illustrates that defendants represented black members differently from white members.

According to defendants, no Brotherhood official ever discriminated against Forbes on the basis of his race. Rather, they contend that Rivard never received the notice of Forbes' hearing date, and that his failure to appear was an innocent mistake. Defendants argue that Forbes has failed to produce any evidence to the contrary. Therefore, defendants move for summary judgment on all four Counts of the Complaint. After hearing oral arguments on defendants' motion, the Court took this matter under advisement. It is now in order for decision.

It should be noted that the following events have transpired since oral arguments were heard in this matter. The Commission's decision holding that the Department had engaged in racial discrimination against Forbes with respect to the terms and conditions of his employment was appealed by the Department to Rhode Island Superior Court, pursuant to R.I.Gen.Laws § 42–35–15. In a bench decision on January 12, 1995, the Superior Court reversed the Commission's decision, stating that it was not supported by substantial evidence and was clearly erroneous. Forbes filed a petition for a writ of certiorari with the Rhode Island Supreme Court, but it was denied on July 27, 1995.

Therefore, at this time all of Forbes' eggs are in this basket.

## II. Standard of Review

Rule 56(c) of the Federal Rules of Civil Procedure sets forth the familiar standard for ruling on a summary judgment motion:

> The judgment sought shall be rendered forthwith if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law.

The Court must view all evidence and related inferences in the light most favorable to the nonmoving party. *Continental Casualty Co. v. Canadian Universal Ins. Co.*, 924 F.2d 370, 373 (1st Cir.1991). Summary judgment will be appropriate only if the record, as seen in the light most favorable to the nonmovant, "fails to yield a trialworthy issue as to some material fact." *Martinez v. Colon*, 54 F.3d 980, 983–84 (1st Cir.), *cert. denied*, —— U.S. ——, 116 S.Ct. 515, 133 L.Ed.2d 423 (1995).

## III. Analysis

### A. 42 U.S.C. § 1983

Forbes alleges in Count I of his complaint that defendants, acting under color of state law, purposefully discriminated against him on the basis of his race. In particular, Forbes claims that defendants failed to either notify him of his scheduled hearing date or appear on his behalf at the hearing because he was black. Forbes argues that this deliberate act of discrimination violates his Fourteenth Amendment equal protection rights, and is actionable under 42 U.S.C. § 1983 ("Section 1983"). Defendants respond that Forbes has failed to put forth any evidence establishing that they purposefully discriminated against him or that they acted under color of state law. Therefore, defendants argue that no genuine issue of material fact exists as to Forbes' cause of action under Section 1983 and they are entitled to judgment as a matter of law.

Section 1983 provides:

Every person who, under color of any statute, ordinance, regulation, custom, or usage, of any State or Territory or the District of Columbia, subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress. 42 U.S.C. § 1983 (1994).

The two essential elements of a cause of action under Section 1983 are "(i) that the conduct complained of has been committed under color of state law, and (ii) that this conduct worked a denial of rights secured by the Constitution or laws of the United States." *Chongris v. Board of Appeals of Andover*, 811 F.2d 36, 40 (1st Cir.), *cert. denied*, 483 U.S. 1021, 107 S.Ct. 3266, 97 L.Ed.2d 765 (1987).[2] The Court will discuss these requirements in turn.

■■■ The inquiry as to whether someone is acting under color of state law for purposes of Section 1983 is tightly interwoven with the determination of state action under the Fourteenth Amendment; essentially the requirements are identical. *See United States v. Price*, 383 U.S. 787, 794 n. 7, 86 S.Ct. 1152, 1157 n. 7, 16 L.Ed.2d 267 (1966). If the conduct at issue constitutes Fourteenth Amendment state action, then it is also action under color of state law for purposes of Section 1983. *Lugar v. Edmondson Oil Co.*, 457 U.S. 922, 935, 102 S.Ct. 2744, 2752, 73 L.Ed.2d 482 (1982). It is axiomatic that neither Section 1983, nor the Fourteenth Amendment apply to private conduct. *Rodriguez–Garcia v. Davila*, 904 F.2d 90, 95 (1st Cir.1990).

■■■ "The traditional definition of acting under color of state law requires that the defendant in a § 1983 action have exercised power 'possessed by virtue of state law and made possible only because the wrongdoer is clothed with the authority of state law.'" *West v. Atkins*, 487 U.S. 42, 49, 108 S.Ct.

2250, 2255, 101 L.Ed.2d 40 (1988) (quoting *United States v. Classic*, 313 U.S. 299, 326, 61 S.Ct. 1031, 1043, 85 L.Ed. 1368 (1941)). Similarly, a two part test has been used to determine state action. "First, the deprivation must be caused by the exercise of some right or privilege created by the State ... or by a person for whom the State is responsible ... Second, the party charged with the deprivation must be a person who may fairly be said to be a state actor." *Lugar*, 457 U.S. at 937, 102 S.Ct. at 2753–54. Consequently, state action may be the product of either the direct or indirect involvement of the state. *Rodriguez–Garcia*, 904 F.2d at 95.

■■ Direct state action derives from the conduct of state employees. "[S]tate employment is generally sufficient to render the defendant a state actor." *Lugar*, 457 U.S. at 935 n. 18, 102 S.Ct. at 2752 n. 18. Likewise, "[i]t is firmly established that a defendant in a § 1983 suit acts under color of state law when he abuses the position given to him by the State." *West*, 487 U.S. at 49–50, 108 S.Ct. at 2255.

■■ State employees, however, do not necessarily act under color of state law merely by acting. *Martinez*, 54 F.3d at 986; *Corrente*, 759 F.Supp. at 81. The private conduct of a public employee is not actionable under Section 1983. "[S]ection 1983 is not implicated unless a state actor's conduct occurs in the course of performing an actual or apparent duty of his office, or unless the conduct is such that the actor could not have behaved in that way but for the authority of his office." *Martinez*, 54 F.3d at 986. Similarly, "a public employee acts under color of state law while acting in his official capacity or while exercising his responsibilities pursuant to state law." *West*, 487 U.S. at 50, 108 S.Ct. at 2255.

In *Polk County v. Dodson*, 454 U.S. 312, 102 S.Ct. 445, 70 L.Ed.2d 509 (1981), the Supreme Court carved out a narrow exception to the rule that a state employee's conduct taken within the scope of his assigned

---

**2.** Although it is also required that the entity responsible for the alleged deprivation of civil rights be a "person" within the terms of Section 1983, all parties agree that this requirement has

been met with respect to both defendants. *See Corrente v. State of Rhode Island, Dep't of Corrections*, 759 F.Supp. 73, 80 (D.R.I.1991)(union is a person within meaning of Section 1983).

duties is action under color of state law. The Court held that "a public defender does not act under color of state law when performing a lawyer's traditional functions as counsel to a defendant in a criminal proceeding." *Id.* at 325, 102 S.Ct. at 453.

In *Polk County*, 454 U.S. at 319–22, 102 S.Ct. at 450–52, the Court examined the public defender's function, and not simply his relationship with the state, in determining whether he had acted under color of state law. Although the public defender was paid by the state, as a defense lawyer in a criminal proceeding, "a public defender is not acting on behalf of the State; he is the State's adversary." *Id.* at 322 n. 13, 102 S.Ct. at 452 n. 13. In this capacity, the public defender maintained the same level of professional independence as a private attorney, and the state was constitutionally obligated to respect this independence. *Id.* at 321–22, 102 S.Ct. at 451–52. Therefore, the public defender, acting as counsel to an indigent criminal defendant, performed essentially a private function. *Id.* at 325, 102 S.Ct. at 453.

■ The *Polk County* holding has subsequently been limited by the Supreme Court to the unique role of the public defender as the state's adversary. In *West*, 487 U.S. at 54, 108 S.Ct. at 2258, the Court held that a physician, under contract with the state to treat inmates in a state prison hospital, acted under color of state law when treating an inmate. The Court stated that *Polk County* was "the only case in which [the Supreme Court] has determined that a person who is employed by the State and who is sued under § 1983 for abusing his position in the performance of his assigned tasks was not acting under color of state law." *Id.* at 50, 108 S.Ct. at 2256. Unlike the public defender in *Polk County*, the doctor's "professional and ethical obligations to make independent medical judgments did not set him in conflict with the State and other prison authorities." *Id.* at 51, 108 S.Ct. at 2256. Therefore, under current Supreme Court jurisprudence, absent a role inherently adverse to the state, a state employee acts under color of state law when he abuses the position given to him by the state.

■ In the present case, viewing the evidence and all reasonable inferences therefrom in favor of Forbes, the Court opines that Rivard acted under color of state law when he allegedly allowed Forbes' appeal to lapse before the Appeal Board. Since Rivard is an employee of the State of Rhode Island, he is presumptively a state actor when he acts within the scope of his actual or apparent duties or when he abuses the position he has been given by the state. *See Martinez*, 54 F.3d at 986; *West*, 487 U.S. at 49–50, 108 S.Ct. at 2255–56.

Rivard's employment status is rather unique. He is a correctional officer paid by the State, but he spends virtually all of his working time on the Brotherhood's business as Grievance Chairman. Rivard's position with the Brotherhood, therefore, is not determinative of his status as a state actor. Rivard has failed to present any evidence demonstrating that his position as Grievance Chairman for the Brotherhood is outside the scope of his state employment. It can reasonably be inferred that Rivard is being paid by the State to work exclusively for the Brotherhood. Therefore, any action taken by Rivard in his role as Grievance Chairman must necessarily be action taken under color of state law.

When Rivard committed the alleged misconduct at issue in this case he was clearly acting in his capacity as Grievance Chairman. Rivard's function as a state employee is to represent the Brotherhood, and its members, with respect to disputes with the State. Pursuant to this mandate, Rivard undertook the duty of representing Forbes before the Appeal Board. His failure to properly carry through thus can be viewed as state action, since it represents a breach of the actual duties of his office. Likewise, Rivard could not have caused harm to Forbes but for the authority given to him by the State, as state employment appears to be a requirement of holding the office of Grievance Chairman for the Brotherhood.

At this time, the Court is satisfied that the exception enunciated in *Polk County* should not be extended to apply to Rivard acting in the position of Grievance Chairman. The

Supreme Court has never applied the reasoning of *Polk County* to any position other than that of public defender.[3] In fact, the Court's subsequent opinion in *West,* 487 U.S. at 50–51, 108 S.Ct. at 2256, seems to limit the holding in *Polk County* to the unique role of the public defender as counsel to an indigent defendant in a criminal proceeding.

As Grievance Chairman of the Brotherhood, Rivard does not posses the same level of professional independence enjoyed by a public defender. Unlike a public defender, Rivard was not bound by canons of professional responsibility mandating his exercise of strict independent judgment on behalf of Forbes. *See Polk County,* 454 U.S. at 321, 102 S.Ct. at 451. Instead, Rivard's only duty to Forbes, pursuant to the duty of fair representation, was to not act in an arbitrary or perfunctory fashion. *See Belanger v. Matteson,* 115 R.I. 332, 346 A.2d 124, 131, *cert. denied,* 424 U.S. 968, 96 S.Ct. 1466, 47 L.Ed.2d 736 (1976). Similarly, Rivard's representation of Forbes lacked the constitutional underpinnings of the relationship between a public defender and an indigent client which were relied upon by the Supreme Court in *Polk County. See Polk County,* 454 U.S. at 321–22, 102 S.Ct. at 451–52. Therefore, Rivard is not sufficiently insulated from the State so as to hold as a matter of law that his conduct as Grievance Chairman is not action under color of state law.

At the very least, a genuine issue exists as to whether Rivard acted under color of state law in his capacity as Grievance Chairman of the Brotherhood. The exact nature of Rivard's relationship with the State is a factual matter that will have to be thoroughly developed at trial. At this stage of the proceedings, there is sufficient evidence in the record to support Forbes' claim that Rivard acted under color of state law.

■■■■ The issue of state action with regard to the Brotherhood is not as clear. Since the Brotherhood is a private entity, direct state action is not present. One does not have to be an officer of the state, however, to act under color of state law. *Price,* 383 U.S. at 794, 86 S.Ct. at 1157; *Corrente,* 759 F.Supp. at 81. Several theories exist under which private action may be found to have risen to the level of state action. *See Rodriguez–Garcia,* 904 F.2d at 96–99.

The Court does not have to reach the thorny question of whether the Brotherhood acted under color of state law in this case, however, since Forbes has failed to demonstrate that a genuine issue exists as to the second element of his Section 1983 claim against the Brotherhood, namely, that the Brotherhood has denied Forbes rights secured by the Constitution or laws of the United States.

The gravamen of Forbes' claim is that defendants failed to notify him of his appeal hearing or appear on his behalf at this hearing because he was black. Consequently, Forbes alleges that defendants violated his Fourteenth Amendment equal protection rights by subjecting him to different treatment than similarly situated white members of the Brotherhood.

■■■■ A plaintiff alleging a violation of the Equal Protection Clause must prove that the defendant purposefully discriminated against him. *Arlington Heights v. Metropolitan Hous. Dev. Corp.,* 429 U.S. 252, 265, 97 S.Ct. 555, 563, 50 L.Ed.2d 450 (1977); *Federal Deposit Ins. Corp. v. Henderson,* 940 F.2d 465, 471 (9th Cir.1991). "Determining whether invidious discriminatory purpose was a motivating factor demands a sensitive inquiry into such circumstantial and direct evidence of intent as may be available." *Arlington Heights,* 429 U.S. at 266, 97 S.Ct. at 564.

---

3. Several lower courts, relying on *Polk County,* have held that a guardian ad litem, as a fiduciary legally obligated to act in a minor's best interests, cannot be considered a state actor. *See, e.g., Meeker v. Kercher,* 782 F.2d 153, 155 (10th Cir.1986); *Snyder v. Talbot,* 836 F.Supp. 19, 24 (D.Me.1993). *But see Thomas S. v. Morrow,* 781 F.2d 367, 377–78 (4th Cir.), *cert. denied,* 476 U.S. 1124, 106 S.Ct. 1992, 90 L.Ed.2d 673 (1986) (guardian does act under color of state law). Even if this Court were to broaden *Polk County* to cover guardians ad litem, however, the role of a guardian ad litem is factually distinguishable from the nature of the position held by Rivard as Grievance Chairman. As a fiduciary who owes an undivided loyalty to the minor represented, the guardian ad litem is in a far more analogous position to that of a public defender.

A court must be "particularly cautious" about granting summary judgment when a party's state of mind is in issue. *Stepanischen v. Merchants Despatch Transp. Corp.*, 722 F.2d 922, 928 (1st Cir. 1983). In such cases, since direct evidence of intent is rarely available, "jury judgments about credibility are typically thought to be of special importance." *Id.* The mere presence of the issue of intent, however, does not preclude summary judgment altogether. Rather, there must be some indication that the nonmovant "can produce the requisite quantum of evidence to enable him to reach the jury with his claim." *Hahn v. Sargent*, 523 F.2d 461, 468 (1st Cir.), *cert. denied*, 425 U.S. 904, 96 S.Ct. 1495, 47 L.Ed.2d 754 (1976).

Forbes has clearly put forth sufficient evidence to defeat summary judgment as to his Section 1983 claim against Rivard. Petteruti has stated in her deposition that notice of Forbes' hearing date was sent to Rivard. It is entirely reasonable to infer that Rivard received this notice. *See United States Fire Ins. Co. v. Producciones Padosa, Inc.*, 835 F.2d 950, 952 n. 2 (1st Cir.1987) (letter duly mailed is presumed to reach destination at regular time and be received by addressee). Yet inexplicably Rivard never notified Forbes and never appeared at the hearing. He also never informed Forbes that he had received a notice of the dismissal.

Forbes has offered statistical evidence to show that Rivard's failure to act was motivated by racial bias. According to Forbes, since 1985, the Brotherhood represented seven members who had their appeals dismissed because of a failure to appear. Four of these individuals were black, one was white, and the race of the other two could not be determined. It is reasonable to infer that Rivard, as Grievance Chairman, was responsible for the representation of these individuals. Although these statistics are far from conclusive, when coupled with Rivard's questionable explanation for his failure to appear on Forbes' behalf, a genuine factual dispute exists on the issue of Rivard's motives which makes summary judgment inappropriate as to him.

The record, however, contains insufficient evidence to support a jury verdict against the Brotherhood under Section 1983. It is well established that a Section 1983 action cannot be maintained against a municipality based on a respondeat superior theory of liability. *Monell v. New York City Dept. of Social Services*, 436 U.S. 658, 694, 98 S.Ct. 2018, 2037, 56 L.Ed.2d 611 (1978); *Gaudreault v. Municipality of Salem, Mass.*, 923 F.2d 203, 209 (1st Cir.), *cert. denied*, 500 U.S. 956, 111 S.Ct. 2266, 114 L.Ed.2d 718 (1991). This rule has been extended to apply with equal force to private entity state actors. *Harvey v. Harvey*, 949 F.2d 1127, 1129 (11th Cir.1992); *Rojas v. Alexander's Dept. Store, Inc.*, 924 F.2d 406, 408–09 (2d Cir.), *cert. denied*, 502 U.S. 809, 112 S.Ct. 52, 116 L.Ed.2d 30 (1991). Therefore, an entity will be liable under Section 1983 only for its own wrongs.

An entity is liable under Section 1983 only when the execution of its policies or customs causes the plaintiff's alleged constitutional deprivation. *Monell*, 436 U.S. at 694, 98 S.Ct. at 2037. A policy "generally implies a course of action consciously chosen from among various alternatives." *Oklahoma City v. Tuttle*, 471 U.S. 808, 823, 105 S.Ct. 2427, 2436, 85 L.Ed.2d 791 (1985). In order to support entity liability under Section 1983, a policy must be "so well-settled and widespread that the policymaking officials of the [entity] can be said to have either actual or constructive knowledge of it yet did nothing to end the practice." *Bordanaro v. McLeod*, 871 F.2d 1151, 1156 (1st Cir.), *cert. denied*, 493 U.S. 820, 110 S.Ct. 75, 107 L.Ed.2d 42 (1989).

Similarly, an entity can be held liable under Section 1983 for its inaction. Again, however, this theory of liability is only available when the plaintiff is able to show a conscious choice on the part of the entity. *Canton v. Harris*, 489 U.S. 378, 389, 109 S.Ct. 1197, 1205, 103 L.Ed.2d 412 (1989). Therefore, an entity is liable under Section 1983 only when its failure to act amounts to deliberate indifference to the plaintiff's constitutional rights. *Id.* at 392, 109 S.Ct. at 1206; *Bowen v. City of Manchester*, 966 F.2d 13, 18 (1st Cir.1992).

In the present case, Forbes has presented no evidence of any conscious Brotherhood action or inaction which caused the alleged violation of his constitutional rights. Forbes claims that the Brotherhood failed to enact procedures that would have prevented Rivard from performing his allegedly discriminatory conduct. However, Forbes has not offered any evidence demonstrating that the Brotherhood did so out of deliberate indifference to the constitutional rights of black union members.

Forbes had contact with three Brotherhood officials: Carone, Sabelewski, and Rivard. Carone represented Forbes at several counseling sessions with the Department relating to Forbes' allegedly inadequate performance at work. In his deposition, Forbes admits that he has no facts upon which he could base the conclusion that Carone discriminated against him. Sabelewski, President of the Brotherhood, had spoken with Forbes immediately following his termination by the Department. Forbes has not alleged any discriminatory conduct on his part. In fact, Sabelewski had encouraged Forbes to appeal his termination. As discussed above, however, a genuine issue exists as to whether Rivard purposefully discriminated against Forbes.

When all of the evidence is examined in the light most favorable to Forbes, only one conclusion is possible: any alleged deprivation of Forbes' constitutional rights was caused *solely* by the conduct of Rivard. There is no evidence indicating that any Brotherhood official other than Rivard was involved in representing Forbes before the Appeal Board, or that any other official received notice of Forbes' hearing. Similarly, there has been no showing by Forbes that harm was caused to him by any conscious, well-established policy of the Brotherhood, or that the Brotherhood failed to act out of deliberate indifference to his constitutional rights. Consequently, no reasonable jury could find that the Brotherhood violated Forbes' constitutional rights.

For the foregoing reasons, defendants' motion for summary judgment on plaintiff's Section 1983 claim in Count I is granted as to the Brotherhood, but denied as to Rivard, who is sued in his individual capacity.

## B. 42 U.S.C. § 1985

 In Count I of his complaint, Forbes has also alleged a cause of action under 42 U.S.C. § 1985 ("Section 1985") against both defendants. Specifically, Forbes claims that a conspiracy existed between the Department and the defendants to not proceed with Forbes' appeal because of his race, in violation of Section 1985(3). The defendants argue that the record is completely devoid of any evidence of a conspiracy between the Department and either defendant, and that summary judgment is proper on this claim.

Section 1985(3) reads, in pertinent part:

If two or more persons ... conspire ... for the purpose of depriving, either directly or indirectly, any person or class of persons of the equal protection of the laws, or of equal privileges and immunities under the laws ...; in any case of conspiracy set forth in this section, if one or more persons engaged therein do, or cause to be done, any act in furtherance of the object of such conspiracy, whereby another is injured in his person or property, or deprived of having and exercising any right or privilege of a citizen of the United States, the party so injured or deprived may have an action for the recovery of damages occasioned by such injury or deprivation, against any one or more of the conspirators. 42 U.S.C. § 1985(3) (1994).

The most fundamental element of a claim under Section 1985(3) is the existence of a conspiracy. By definition, a conspiracy requires more than one actor. The rule is well established in the First Circuit that "allegations of conspiracy must nevertheless be supported by material facts, not merely conclusory statements." *Slotnick v. Garfinkle*, 632 F.2d 163, 165 (1st Cir.1980).

Forbes has failed to present one scintilla of evidence indicating the presence of any conspiracy to violate his constitutional rights. As previously discussed, the evidence presented clearly indicates that any alleged deprivation of constitutional rights suffered by Forbes could only be attributed to the conduct of Rivard. Forbes argues, however,

that a conspiracy is demonstrated by the fact that Rivard had an informal agreement with the Department by which he could extend the time for filing a grievance. Even if true, this fact bears no relevance to the question of whether a conspiracy existed between the Department and defendants to deny Forbes his right to appeal his termination. In short, Forbes has offered no evidence of any conspiracy between the Department and defendants to support his purely conclusory assertions.

Consequently, the motion of both defendants for summary judgment as to Forbes' claim under Section 1985(3) contained in Count I is granted.

## C. Breach of Contract

■ In Count II of the Complaint, Forbes asserts a state law claim against defendants for breach of contract. Forbes argues that, by failing to notify him of the hearing of his pending appeal, defendants breached both the collective bargaining agreement between the Department and the Brotherhood, and an implied in fact contract that existed between the Brotherhood and himself. Defendants respond that no contractual duty was owed to Forbes beyond the duty of fair representation, and that no separate claim for breach of contract should lie.

■ The law is clear that, in the absence of specific contract language to the contrary, a union does not owe its members a duty beyond the duty of fair representation. In *United Steelworkers of Am. v. Rawson*, 495 U.S. 362, 110 S.Ct. 1904, 109 L.Ed.2d 362 (1990), the Supreme Court examined the question of whether an employee, as a third party beneficiary, may bring a contract action under Section 301 of the Labor Management Relations Act, 29 U.S.C. § 185, against a union based on the collective bargaining agreement between the employer and the union. Although the Court stated that a labor union could assume contractual duties towards employees through a collective bargaining agreement, in the absence of "language in the collective-bargaining agreement

specifically indicating an intent to create obligations enforceable against the union by individual employees," a union owes no duty beyond the duty of fair representation. *Id.* at 374, 110 S.Ct. at 1912.

The Court also held that, under traditional contract principles, a third party beneficiary generally has no greater rights in a contract than the promisee. *Id.* at 375, 110 S.Ct. at 1912–13. For an employee to have an enforceable right, as a third party beneficiary, against a union, "at the very least the employer must have an enforceable right as promisee." *Id.* Therefore, the employee must base his claim on a provision in the collective bargaining agreement that involves a promise by the union to the employer. *Id.*

Although *Rawson* involved the application of federal labor law, the Rhode Island Supreme Court would likely apply its reasoning in the Rhode Island labor law context and thus to the Brotherhood, a state employee union. The duty of fair representation recognized under Rhode Island labor law was explicitly based on the parallel federal scheme. *See Belanger*, 346 A.2d at 129. Therefore, this Court concludes that it is logical to look to federal precedent when interpreting the duties owed by state employee unions to their members under Rhode Island law.

In any event, Rhode Island law seems entirely consistent with federal law on this issue. In *Cabral v. Local No. 41, Int'l Molders and Foundry Workers Union of N. Am.*, 82 R.I. 178, 106 A.2d 739, 740 (1954), the Rhode Island Supreme Court held that the right of an employee to maintain an action against his union for breach of a collective bargaining agreement "rests upon a promise, undertaking, or agreement of some kind made by the [union] with the plaintiff employee to act in some specific manner for his benefit." The employee must rely on "a definite enforceable obligation" moving from the union to himself. *Id.*[4]

Forbes has not presented any evidence indicating that the Brotherhood assumed

4. Subsequent to *Cabral*, the Rhode Island Supreme Court recognized the duty of fair representation in *Belanger*. When an employee alleg-

es that the union owes a duty greater than the duty of fair representation, however, the holding in *Cabral* remains applicable.

contractual duties towards him more demanding than the duty of fair representation. Forbes alleges that the defendants violated the collective bargaining agreement by failing to represent him at his appeal. The portion of the collective bargaining agreement submitted by Forbes, however, contains no language specifically creating a more far-reaching duty on the part of the Brotherhood than the duty of fair representation. Similarly, there is no evidence that the Brotherhood made any additional promise, undertaking or agreement to act on Forbes' behalf in a manner different from that required by the duty of fair representation.

Since Forbes has failed to offer any evidence indicating that defendants owed him a more stringent duty than the duty of fair representation, no separate claim lies for breach of contract. Consequently, the motion of both defendants for summary judgment on Count II is granted.

**D. The Duty of Fair Representation**

▮▮▮▮ Forbes alleges in Count III of his complaint that the failure of defendants to adequately represent him before the Appeal Board constitutes a violation of the duty of fair representation. Defendants admit that a factual dispute exists on the question of whether Rivard received the notice of Forbes' hearing from the Appeal Board, but they argue that Forbes has not shown that Rivard's failure to appear resulted from more than his negligence, as required by the duty of fair representation.

In *Belanger* the Rhode Island Supreme Court first recognized a duty of fair representation with respect to public employee labor unions. The duty of fair representation had existed under federal labor law for some time prior to this decision. *See Steele v. Louisville & Nashville R.R. Co.*, 323 U.S. 192, 65 S.Ct. 226, 89 L.Ed. 173 (1944). Public employee unions, however, are not governed by the National Labor Relations Act, as states and political subdivisions thereof are excepted from the definition of an "employer". 29 U.S.C. § 152(2)(1994).

In *Belanger* the Court stated that, since the Rhode Island General Assembly had created a labor regulation structure parallel to the federal scheme, the reasoning behind the federal duty of fair representation was applicable to unions governed by Rhode Island law. *Belanger*, 346 A.2d at 129. Like federal labor law, under the law of Rhode Island, the "employee organization selected by the municipal employees in an appropriate bargaining unit ... shall be recognized by the municipal employer ... as the sole and exclusive negotiating or bargaining agent for all of the municipal employees in the appropriate bargaining unit." R.I.Gen.Laws § 28-9.4-4 (1995). Therefore, under both federal and Rhode Island law the rights of individual employees to advance their interests individually has been usurped. *Belanger*, 346 A.2d at 129. In *Belanger*, the Court held that a corollary of such power is the duty to fairly and adequately represent the interests of all those who are part of the bargaining unit. *Id.*

▮▮▮▮ In the context of assisting with employee grievances, the duty of fair representation requires a union to " 'in good faith and in a nonarbitrary manner, make decisions as to the merits of particular grievances,' ... and, if it decides to pursue a grievance, it must not do so in a perfunctory manner." *Id.* at 131 (quoting *Vaca v. Sipes*, 386 U.S. 171, 194, 87 S.Ct. 903, 919, 17 L.Ed.2d 842 (1967)). Although a union must be free to take a position that favors some employees at the expense of others, the union must make its choice in good faith based on the merits of the controversy. *Id.; Burns v. Segerson*, 122 R.I. 123, 404 A.2d 500, 503 (1979).

▮▮▮▮ Clearly, the failure to represent a union member at his grievance because of his race would be arbitrary conduct, taken in bad faith. *See Woods v. Graphic Communications*, 925 F.2d 1195, 1203 (9th Cir.1991); *Carroll v. Brotherhood of R.R. Trainmen*, 417 F.2d 1025, 1027-28 (1st Cir.), *cert. denied*, 397 U.S. 1039, 90 S.Ct. 1359, 25 L.Ed.2d 650 (1970). In fact, the federal duty of fair representation was initially created to combat racial discrimination by labor unions. *See Steele*, 323 U.S. 192, 65 S.Ct. 226. Therefore, since a genuine issue exists as to whether Rivard purposefully discriminated

against Forbes because of his race, necessarily, a genuine issue exists as to whether Rivard acted in good faith and in a nonarbitrary manner in representing Forbes before the Appeal Board.

■ Although Forbes has not shown that the Brotherhood specifically authorized or ratified Rivard's allegedly discriminatory conduct, the Brotherhood will be liable for Rivard's discrimination under traditional agency law principles. Numerous courts have applied the common law of agency, including the doctrine of respondeat superior, in determining union liability under the federal duty of fair representation. *See Considine v. Newspaper Agency Corp.,* 43 F.3d 1349, 1357 n. 8 (10th Cir.1994); *Aguirre v. Automotive Teamsters,* 633 F.2d 168, 172 (9th Cir.1980). Therefore, it is appropriate to apply the common law of agency, in the absence of explicit state law to the contrary, in these circumstances.

■ Under the agency principle of respondeat superior, a master is subject to liability for the torts of his servant committed while acting in the scope of his or her employment. *Vargas Mfg. Co. v. Friedman,* 661 A.2d 48, 53 (R.I.1995). Any decision by Rivard to represent or not to represent a union member before the Appeal Board is clearly within the scope of his position at the Brotherhood. The fact that Rivard's motive may have been based on racial prejudice, which is forbidden by the Brotherhood, does not make his decision beyond the scope of his employment as Grievance Chairman. *See Restatement (Second) of Agency* § 230 (1958) (forbidden acts may be within scope of employment). Therefore, the Brotherhood is liable for any breach of the duty of fair representation resulting from Rivard's alleged failure to represent Forbes because of his race.

■ The next question is whether Rivard would be immune from personal liability under the duty of fair representation for his allegedly discriminatory conduct. The Court has been unable to locate Rhode Island law on the issue of individual liability under the state duty of fair representation. Again, however, given that the state duty of fair representation was expressly modeled after its federal counterpart, the Court will look to federal law by analogy in deciding this novel question.

Courts have consistently held that, under the federal labor laws, union agents are immune from personal liability for actions taken as "union representatives within the ambit of the collective bargaining process," even if the union had not authorized the agent's conduct.[5] *Montplaisir v. Leighton,* 875 F.2d 1, 4 (1st Cir.1989). Consequently, it has been held that an action for breach of the duty of fair representation lies only against the union entity, and not against individual union officials. *See Carter v. Smith Food King,* 765 F.2d 916, 920–21 (9th Cir.1985); *Suwanchai v. International Bhd. of Elec. Workers, Local 1973,* 528 F.Supp. 851, 861–62 (D.N.H.1981).

In *Best v. Rome,* 858 F.Supp. 271 (D.Mass. 1994), *aff'd,* 47 F.3d 1156 (1st Cir.1995), the Court confronted the issue of whether to apply the federal rule granting immunity to union officials to a case brought under the Massachusetts duty of fair representation. The Court relied on the fact that the state courts generally followed federal precedent when interpreting the state duty of fair representation. *Id.* at 275 n. 7. The Court concluded that imposing personal liability on

---

5. The individual immunity of union officials derives from Section 301 of the Labor Management Relations Act, which states: "[a]ny money judgment against a labor organization in a district court of the United States shall be enforceable only against the organization as an entity and against its assets, and shall not be enforceable against any individual member or his assets." 29 U.S.C. § 185(b) (1994). Section 301 reflects Congress' fear that private lawsuits against union members could have been used as a union busting device following the *Danbury Hatters* case, *see Savings Bank of Danbury v. Loewe,* 242 U.S.

357, 37 S.Ct. 172, 61 L.Ed. 360 (1917); *Lawlor v. Loewe,* 235 U.S. 522, 35 S.Ct. 170, 59 L.Ed. 341 (1915); *Loewe v. Lawlor,* 208 U.S. 274 (1908), in which numerous union officers and members suffered a huge money judgment due to their participation in a union directed boycott of their employer's hats. *See Montplaisir,* 875 F.2d at 4. Consequently, the courts have read Section 301 broadly, so as to further this underlying policy. *See Atkinson v. Sinclair Refining Co.,* 370 U.S. 238, 248–49, 82 S.Ct. 1318, 1324–25, 8 L.Ed.2d 462 (1962).

union agents would interfere with the goal of giving unions substantial latitude to act for the collective good of its members. *Id.* at 275. Therefore, it was held that the federal rule of immunity should be applied to actions brought under the state duty of fair representation. *Id.*

 Similarly, this Court concludes that the immunity granted to union officials under federal labor law with respect to the duty of fair representation should be applied to the analogous duty under Rhode Island law. Therefore, the Court holds that no cause of action exists against Rivard individually for any alleged breach of the duty of fair representation under Rhode Island law.

For the aforementioned reasons, defendants' motion for summary judgment with respect to Count III is granted as to Rivard individually, but denied as to the Brotherhood.

### E. Intentional Infliction of Emotional Distress

 Count IV sets forth a claim for intentional infliction of emotional distress. Forbes alleges that defendants' failure to fairly represent him was racially motivated, and that caused him severe and extreme emotional distress, thereby causing various physical manifestations and monetary loss. Defendants argue that, even looking at the facts in the light most favorable to Forbes, they do not demonstrate that defendants engaged in extreme and outrageous conduct, as required by Rhode Island law.

This Court has previously elucidated the four elements necessary to sustain a claim of intentional infliction of emotional distress under Rhode Island law:

(1) the conduct must be intentional or in reckless disregard of the probability of causing emotional distress, (2) the conduct must be extreme and outrageous, (3) there must be a causal connection between the wrongful conduct and the emotional distress, and (4) the emotional distress in question must be severe. *Showalter v. Allison Reed Group, Inc.*, 767 F.Supp. 1205, 1207 n. 1 (D.R.I.1991) (quoting *Champlin v. Washington Trust Co.*, 478 A.2d 985, 989 (R.I.1984)).

The fourth element requires proof that the emotional distress produced physical symptomatology. *Id.*

 Forbes has failed to demonstrate that a genuine issue exists on the question of whether the conduct at issue was extreme and outrageous. Extreme and outrageous conduct has been defined as conduct that is "atrocious, and utterly intolerable in a civilized community." *Fudge v. Penthouse Int'l, Ltd.*, 840 F.2d 1012, 1021 (1st Cir.), *cert. denied*, 488 U.S. 821, 109 S.Ct. 65, 102 L.Ed.2d 42 (1988). The Restatement of Torts is instructive on the definition of extreme and outrageous conduct. It states:

[i]t has not been enough that the defendant has acted with an intent which is tortious or even criminal, or that he has intended to inflict emotional distress, or even that his conduct has been characterized by "malice," or a degree of aggravation which would entitle the plaintiff to punitive damages for another tort. Liability has been found only where the conduct has been so outrageous in character, and so extreme in degree, as to go beyond all possible bounds of decency, and to be regarded as atrocious, and utterly intolerable in a civilized community. *Restatement (Second) of Torts* § 46 cmt. d (1965).

Even if Rivard acted with a discriminatory animus in allowing Forbes' appeal to lapse, that conduct alone cannot be regarded as extreme and outrageous. Viewing the record in the light most favorable to Forbes, Rivard failed to carry through on Forbes' appeal, and it was thereby dismissed. Forbes admits that he never had any contact with Rivard, and that he did not learn about the dismissal of his appeal until over two years later. Certainly, no reasonable jury could describe Rivard's conduct as extreme and outrageous.

 While a factual question exists as to whether Rivard acted out of a discriminatory intent, "[r]acial discrimination alone ... does not state a claim for intentional infliction of emotional distress." *Nichols v. Acme Mkts., Inc.*, 712 F.Supp. 488, 495 (E.D.Pa.1989), *aff'd*, 902 F.2d 1561 (3d Cir.1990). Although racial discrimination is completely unacceptable in our society, numerous courts have

**330**

rejected the argument that conduct taken pursuant to a discriminatory motive is extreme and outrageous per se. *See Martin v. Citibank, N.A.*, 762 F.2d 212, 220 (2d Cir. 1985); *Frazier v. First Union Nat'l Bank*, 747 F.Supp. 1540, 1554 (W.D.N.C.1990); *Nichols*, 712 F.Supp. at 495. Rather, the plaintiff must prove that the conduct is outrageous in character, and not just in motive. *See Restatement (Second) of Torts* § 46 cmt. d (1965). Since Forbes has failed to offer any evidence demonstrating a genuine issue on this element, summary judgment is appropriate as to both defendants. Therefore, the motion of both defendants for summary judgment on Count IV is granted.

## IV. Conclusion

For the foregoing reasons, defendants' motion for summary judgment is granted as to the following claims: (1) Count I, as to the Section 1983 claim against the Brotherhood only, (2) Count I, as to the Section 1985 claim against the Brotherhood and Rivard, (3) Count II, as to the Brotherhood and Rivard, (4) Count III, as to Rivard only, and (5) Count IV, as to the Brotherhood and Rivard. Summary judgment is denied as to the following: (1) Count I, as to the Section 1983 claim against Rivard, and (2) Count III, as to the Brotherhood.

It is so ordered.