Wendi R. LEE, Plaintiff,

v.

The STATE OF RHODE ISLAND; Thomas M. Harrington, in his official capacity as Registrar of Motor Vehicles, and Jeffery B. Pine, as Attorney General of the State of Rhode Island, Defendants.

Civ. A. No. 95–344ML.

United States District Court,
D. Rhode Island.

Oct. 8, 1996.

James E. Kelleher, Warwick, RI, for Plaintiff.

Thomas A. Palombo, Department of Attorney General, Providence, RI, Jeffrey Pine, Attorney General, Providence, RI, Francis Thomas O'Halloran, Jr., RI Division of Motor Vehicles, Pawtucket, RI, for Defendant.

## MEMORANDUM AND ORDER

LISI, District Judge.

This case arises out of the suspension of plaintiff Wendi R. Lee's license to operate a motor vehicle. This matter is presently before the court upon both parties' objections to the Report and Recommendation issued by Magistrate Judge Timothy M. Boudewyns on March 14, 1996. The magistrate judge, after hearing argument on cross motions for summary judgment, recommended that this court grant Lee's motion only in part and deny the defendants' motion. This court held a hearing on this matter on April 23, 1996. For the reasons discussed below, the magistrate judge's Report and Recommendation is adopted in part, the defendants' motion for summary judgment is denied, and Lee's motion is granted.

### I. Factual Background

On or about March 22, 1995, Lee was involved in a motor vehicle collision in Warwick, Rhode Island. Police responded to the scene and made a report. Lee was issued a traffic citation for not having a valid inspection sticker. At the time of the accident, Lee

informed the police that she was insured by the Progressive Insurance Company and provided the number of her policy. According to the insurance document in her possession, Lee's policy appeared due to expire the following week. In actuality, however, the policy had already been cancelled for nonpayment of the insurance premium.

Even though neither automobile sustained significant damage and no one was injured, the driver of the other vehicle filed an accident report with the Department of Safety Responsibility. Lee did not file a like report.[1] The record then becomes unclear. According to defense counsel, when the Registry receives a report from only one party involved in an accident, it generally asks all other parties involved to fill out reports as well. Lee completed and signed an accident report on June 5, 1995, presumably at the Registry's request, setting forth her account of the collision and stating that she was not, in fact, insured at the time of the accident.

On June 6, 1995, before receiving Lee's accident report, defendant Harrington, acting in his capacity as Administrator of the State Division of Motor Vehicles, ordered that Lee's driver's license and any automobile registrations in her name be suspended for three months, both suspensions to be effective June 28, 1995. These suspensions were on account of Lee's failure to maintain motor vehicle liability insurance in violation of R.I.GEN.LAWS § 31–47–9 which states:

> Penalties—(a) *Any owner* of a motor vehicle registered in this state *who shall knowingly operate the motor vehicle* or knowingly permit it to be operated in this state *without having in full force and effect the financial security required by the provisions of this chapter, ... shall be subject to a mandatory suspension of license and registration as follows:* for a first offense a suspension of three (3) months and shall be fined five hundred dollars ($500); for a second offense, a suspension of six (6) months; and shall be fined five hundred dollars ($500) and for a third and subsequent offense, a suspension of one year. Additionally, any person violating this section a third or subsequent time shall be guilty of a misdemeanor and, upon conviction, shall be fined one thousand dollars ($1,000) and may be imprisoned for one year or both.

*Id.* (emphasis added). In concluding that Lee "knowingly" operated a motor vehicle without the requisite insurance, defendant Harrington apparently relied on a separate provision that:

> All accident reports made by persons involved in accidents, or by garages, shall be without prejudice to the individual so reporting ... Provided, however, that in the event an accident report has not been filed, then the failure to file the report shall be considered to be prima facie evidence that the operator and/or the registered owner of the motor vehicle involved was uninsured at the time of the accident.

R.I.GEN.LAWS § 31–26–13.

Defendant Harrington's order was issued without a hearing. R.I.GEN.LAWS § 31–47–10. Lee timely requested an administrative hearing in which she avers she would have presented evidence that she did not "knowingly" operate a motor vehicle without insurance.[2] Under R.I.GEN.LAWS § 31–47–10(b),

---

**1.** Pursuant to R.I.GEN LAWS §§ 31–26–6 and 31–33–1, a driver must file an accident report with the registry within ten days of an "accident resulting in injury to or death of any person or in which the damage to property of any one person including himself or herself, in excess of five hundred dollars ($500) is sustained ..." The defendants acknowledge that, in some cases, drivers face a practical problem of not knowing whether to file within the ten day period because they are unaware of the extent of property damage until *after* another driver files a report. As evidenced in Lee's accident report, the total damage to property did not exceed $250.00 and no personal injury was suffered. Defendants' Exhibit D. Thus, it appears that Lee was not required to file an accident report in the first instance. The defendants concede that had the driver of the other vehicle not filed a report, no further action would likely have been taken.

**2.** Lee submits that she did not learn that her insurance policy had been cancelled for nonpayment until shortly after the accident when she spoke with a representative of Progressive Insurance. She explains that she did not receive any of the invoices and notices of cancellation on account of some interruption in her mail delivery. Apparently, the family dog caused her letter carriers to decline entering the yard for some period of time. For this and other reasons, Lee

however, the hearing officer may not entertain any evidence at the hearing other than proof of insurance.[3] Lee proceeded to file the instant complaint pursuant to 42 U.S.C. §§ 1983 and 1988 claiming that she had been deprived a significant property right without due process of law.

This court issued an order restraining the defendants from enforcing the suspensions until the resolution of this matter. On agreed facts, both parties moved for summary judgment, each seeking a determination of the constitutionality of R.I.GEN.LAWS §§ 31–47–9 and 31–47–10. The matter was referred to a magistrate judge for a recommended disposition pursuant to 28 U.S.C. § 636(b)(1)(B).

The magistrate judge concluded that R.I.GEN.LAWS §§ 31–47–9 and 31–47–10, although unconstitutionally applied to Lee, were not unconstitutional on their face. In arriving at this conclusion, the magistrate judge considered those facts known to the Registry on June 6, 1995, and found that the defendants lacked a sufficient basis upon which to determine that Lee violated the penalty statute, R.I.GEN.LAWS § 31–47–9. More importantly, he found that Lee had no opportunity to question the sufficiency of this determination before her license was suspended.

 This court agrees with the magistrate judge's conclusion that R.I.GEN.LAWS §§ 31–47–9 and 31–47–10 were unconstitu-

tionally applied to Lee and adopts the magistrate judge's Report and Recommendation to this effect. Even though a person is not entitled to "perfect, error-free determinations," *Mackey v. Montrym*, 443 U.S. 1, 13, 99 S.Ct. 2612, 2618, 61 L.Ed.2d 321 (1979), an administrative inquiry must at least uncover a "reasonable possibility of judgment" being rendered against a licensee to satisfy the mandate of procedural due process. *Bell v. Burson*, 402 U.S. 535, 540, 91 S.Ct. 1586, 1590, 29 L.Ed.2d 90 (1971). The basis for defendant Harrington's order unquestionably fails to meet this standard.[4] However, this court also agrees with Lee's contention that, regardless of the facts specific to this case, R.I.GEN.LAWS §§ 31–47–9 and 31–47–10, when read *in pari materia*, facially circumvent the procedural protections guaranteed by the Constitution.

## II. Standard of Review

The court begins its analysis with the familiar precept that a federal court may grant summary judgment in a civil action "if the pleadings, depositions, answers to interrogatories and admissions on file, together with affidavits, if any, show that there is no genuine issue of material fact and that the moving party is entitled to judgment as a matter of law." Fed.R.Civ.P. 56(c). Therefore, a party seeking summary judgment must make a preliminary showing that no genuine issue of material fact exists. *National Amusements,*

---

claims to have been under the actual and reasonable belief that she was fully insured at the time of the accident.

**3.** R.I.GEN.LAWS § 31–47–10(b) provides:

The registrar shall issue any order under this section without a hearing. Any person adversely affected by the order may, within ten (10) days after the issuance of the order, request an administrative hearing before the registrar, who shall provide the person with an opportunity for a hearing in accordance with this paragraph. A request for a hearing does not operate as a suspension of the order. *The scope of the hearing shall be limited to whether the person in fact demonstrated to the registrar proof of financial responsibility in accordance with this section.* The registrar shall determine the date, time, and place of any hearing, provided that the hearing shall be held, and an order issued or findings made, within thirty

(30) days after the registrar receives a request for a hearing. The person shall pay the cost of the hearing before the registrar, if the registrar's order of suspension or impoundment is upheld.
*Id.* (emphasis added).

**4.** Defendant Harrington's reliance on the statutory presumption triggered by Lee's failure to file an accident report was misplaced. First of all, Lee was not required to file a report. However, even assuming that she was so required, her failure to file only shows that she did not have insurance. There was still no basis upon which to conclude that Lee had "knowingly" failed to maintain adequate insurance. Likewise, even if Harrington had received Lee's accident report (which he had not), Lee admitted only to being uninsured. There was no evidence before the Registry tending to suggest Lee's knowledge or her intentional noncompliance with R.I.GEN.LAWS § 31–47–9.

*Inc. v. Town of Dedham*, 43 F.3d 731, 735 (1st Cir.), *cert. denied*, — U.S. ——, 115 S.Ct. 2247, 132 L.Ed.2d 255 (1995). Once this showing is made, the non-movant must then point to facts demonstrating some trial-worthy issue. *See id.* An issue is "genuine" when the evidence relevant to it, "viewed in the light most flattering to the party opposing the motion, [is] sufficiently open-ended to permit a rational fact finder to resolve the issue in favor of either side." *Id.* Here, the court is presented with cross motions for summary judgment on undisputed facts. In this situation, a court may treat the parties as though they have submitted their dispute as a "case stated" and decide the case as a matter of law. *See United Paperworkers Int'l Union, Local 14 v. International Paper Co.*, 64 F.3d 28, 31 (1st Cir.1995); *Equal Employment Opportunity Comm'n v. Steamship Clerks Union, Local 1066*, 48 F.3d 594, 603 (1st Cir.) (citing *Federacion de Empleados del Tribunal Gen. de Justicia v. Torres*, 747 F.2d 35, 36 (1st Cir.1984) (Breyer, J.)), *cert. denied*, — U.S. ——, 116 S.Ct. 65, 133 L.Ed.2d 27 (1995).

### III. *Discussion*

■ The Fourteenth Amendment of the United States Constitution provides that no state may deprive any person of life, liberty, or property without due process of law. Implicit in this guarantee is that any significant deprivation of life, liberty, or property "be preceded by notice and opportunity for hearing appropriate to the nature of the case." *Cleveland Bd. of Educ. v. Loudermill*, 470 U.S. 532, 542, 105 S.Ct. 1487, 1493, 84 L.Ed.2d 494 (1985) (quoting *Mullane v. Central Hanover Bank & Trust Co.*, 339 U.S. 306, 313, 70 S.Ct. 652, 656, 94 L.Ed. 865 (1950)). Simply put, there is a right of "procedural due process" amounting to "a guarantee of fair procedure." *Amsden v. Moran*, 904 F.2d 748, 753 (1st Cir.1990) (quoting *Zinermon v. Burch*, 494 U.S. 113, 125, 110 S.Ct. 975, 983, 108 L.Ed.2d 100 (1990)), *cert. denied*, 498 U.S. 1041, 111 S.Ct. 713, 112 L.Ed.2d 702 (1991). The focus of a procedural due process claim, therefore, is not on whether the underlying state action itself was erroneous but on the manner in which a state acted. *See id; see also Carey v. Pi-*

*phus*, 435 U.S. 247, 266, 98 S.Ct. 1042, 1053, 55 L.Ed.2d 252 (1978).

■ There is not, nor can there be, any dispute that Lee has a protectable property interest in her driver's license. *See Dixon v. Love*, 431 U.S. 105, 112, 97 S.Ct. 1723, 1727, 52 L.Ed.2d 172 (1977); *Bell*, 402 U.S. at 539, 91 S.Ct. at 1589. Driver's licenses may not be taken away without the procedural due process protection required by the Fourteenth Amendment. *See Bell*, 402 U.S. at 539, 91 S.Ct. at 1589. The question in this case is the nature of the process due.

■ Lee complains that she was denied a valuable interest in her Rhode Island driver's license because she did not first have the opportunity to refute the allegation that she *knowingly* operated a motor vehicle without the financial security required by law. This claim brings into the spotlight among the most basic tenets of the Due Process Clause: that an individual be given a "meaningful" opportunity for a hearing, *Armstrong v. Manzo*, 380 U.S. 545, 552, 85 S.Ct. 1187, 1191, 14 L.Ed.2d 62 (1965); and that "an individual be given the opportunity for a hearing *before* he is deprived of any significant property interest." *Loudermill*, 470 U.S. at 542, 105 S.Ct. at 1493 (quoting *Boddie v. Connecticut*, 401 U.S. 371, 389, 91 S.Ct. 780, 792, 28 L.Ed.2d 113 (1971) (emphasis in original)); *see also Warner v. Trombetta*, 348 F.Supp. 1068, 1071 (M.D.Pa.1972) ("essentials of due process require the opportunity for some sort of meaningful administrative hearing prior to the revocation of an operator's license."), *aff'd*, 410 U.S. 919, 93 S.Ct. 1392, 35 L.Ed.2d 583 (1973).

■ The court is mindful that there are no fixed procedures to safeguard the interests of liberty and property in every situation. Rather, due process is a flexible concept. *See Morrissey v. Brewer*, 408 U.S. 471, 481, 92 S.Ct. 2593, 2600, 33 L.Ed.2d 484 (1972). "[T]he processes required by the Clause with respect to the termination of a protected interest will vary depending upon the importance attached to the interest and the particular circumstances under which the deprivation may occur." *Walters v. National Ass'n of Radiation Survivors*, 473 U.S. 305,

320, 105 S.Ct. 3180, 3188, 87 L.Ed.2d 220 (1985). In determining whether existing procedures are adequate to protect the interests at stake, a court must balance a number of factors, including the private interest affected by the state's existing procedures, the risk of erroneous deprivation under them, the probable utility of additional or substitute procedures, and the government's interest in maintaining the existing procedures, keeping in mind the financial and administrative burdens that additional or substitute procedures may involve. *See Walters,* 473 U.S. at 321, 105 S.Ct. at 3189; *Mathews v. Eldridge,* 424 U.S. 319, 335, 96 S.Ct. 893, 903, 47 L.Ed.2d 18 (1976); *Roberts v. State of Maine,* 48 F.3d 1287, 1292 (1st Cir.1995). In applying this test, a court must seek to strike the balance which best comports with fundamental fairness and a universal sense of fair play. *See Roberts,* 48 F.3d at 1292.

The private interest affected in this case, a state issued driver's license, is a significant one in today's society. Depriving a person of the use of her own motor vehicle impacts on her property—on her ability to earn a livelihood. *See Bell,* 402 U.S. at 539, 91 S.Ct. at 1589. It also impacts on her liberty—her ability to get from place to place—whether in pursuit of business or pleasure. *Raper v. Lucey,* 488 F.2d 748, 752 (1st Cir.1973). Moreover, the personal inconvenience and economic hardship suffered by reason of an erroneous suspension of a driver's license is not easily undone through post-suspension review procedures. *See Mackey,* 443 U.S. at 11, 99 S.Ct. at 2617; *Dixon,* 431 U.S. at 113, 97 S.Ct. at 1727; *cf. Eldridge,* 424 U.S. at 340, 96 S.Ct. at 905 (wrongfully terminated social security beneficiaries could be compensated retroactively). For these reasons, the court finds Lee's interest to be considerable.

At the same time, the risk of erroneous deprivation under the existing procedures is great. Because the scope of the predeprivation hearing is confined solely to whether an individual can demonstrate proof of financial security, R.I.GEN.LAWS § 31–47–10(b), every Rhode Island driver who *unknowingly* operates a motor vehicle without the required insurance in force and effect becomes immediately subject to fines, license suspension, and possibly even incarceration. Under the current statutory scheme, there is no opportunity to offer an explanation to the effect that there was an honest mistake before these penalties are imposed. By virtue of R.I.GEN.LAWS § 31–47–10(b), Lee's license would be summarily suspended even if the defendants were to agree that Lee's explanation is reasonable, genuine, and credible because the hearing officer is precluded from considering it.[5] Such exclusion renders the hearing provided by the statute meaningless.

Part and parcel of having a "meaningful" hearing is having "the opportunity to respond" to every essential element of the offense alleged. *See Loudermill,* 470 U.S. at 547, 105 S.Ct. at 1496; *Manzo,* 380 U.S. at 552, 85 S.Ct. at 1191.

It is a proposition which hardly seems to need explication that a hearing which excludes consideration of an element essential to the decision whether licenses of the nature here involved shall be suspended does not meet this standard [of meaningfulness].

*Bell,* 402 U.S. at 542, 91 S.Ct. at 1591. The determination whether a person has violated R.I.GEN.LAWS § 31–47–9 necessarily turns upon a finding of scienter—that the individual "knowingly" operated a motor vehicle without the requisite insurance. Granted, the procedures necessary to preserve due process need not be so comprehensive as to preclude every possibility of error. *Mackey,* 443 U.S. at 13, 99 S.Ct. at 2618. However, the limitation imposed by R.I.GEN.LAWS § 31–47–10(b) needlessly invites it. For Lee, the hearing provided by statute, in which she would have had no opportunity to persuade the hearing officer that her dog chased away the postal carrier, that she did not receive

---

5. In defense of an untenable position, defendants assert that the regular practice at the Registry is to give licensees the opportunity to explain their position, notwithstanding the dictates R.I.GEN. LAWS § 31–47–10(b). While this practice, if true, does nothing to cure the constitutional defect on the face of the statutes, it does rebut the suggestion that it is an overly burdensome additional procedure for the Registry to afford licensees, like Lee, an opportunity to tell their whole side of the story prior to suspension.

any of the insurance invoices or cancellation notices sent to her, and that she honestly and reasonably believed that she was operating her automobile with insurance in full force, would have been tantamount to her having no predeprivation hearing at all.

The defendants assert, rightly, that there are certain emergency situations when a state may terminate a driver's license without a predeprivation hearing. *See Mackey,* 443 U.S. at 19, 99 S.Ct. at 2621; *Dixon,* 431 U.S. at 114, 97 S.Ct. at 1728; *Bell,* 402 U.S. at 542, 91 S.Ct. at 1591. This is not one of them. The cases in which the third factor of the *Eldridge* analysis, the government's interest, was sufficient to overcome the risk of wrongly terminating a driver's license generally involved some imminent risk to public safety accompanied by objectively reliable facts which minimize the risk of erroneous deprivation. *See, e.g., Mackey,* 443 U.S. at 19, 99 S.Ct. at 2621; *Dixon,* 431 U.S. at 114, 97 S.Ct. at 1728.

In *Dixon,* the Supreme Court upheld a system of "points," instituted by the Illinois Secretary of State, whereby a driver's license could be summarily suspended or revoked without a prior hearing. *Dixon,* 431 U.S. at 112–15, 97 S.Ct. at 1727–29. The Court found no constitutional defect with this scheme because the Secretary's decisions, although discretionary, were based on objective, readily determinable criteria. *Id.* The risk of erroneous deprivation was minimal. *Id.* at 113, 97 S.Ct. at 1727. The state's interest, on the other hand, was substantial: An important public interest is served in the prompt removal of safety hazards from roads and highways. *Id.* at 114, 97 S.Ct. at 1728.

*Mackey* followed naturally from *Dixon.* In *Mackey,* a licensee challenged Massachusetts' mandatory suspension of a driver's license upon the refusal to submit to a breath-analysis test and subsequent arrest for driving under the influence. *Mackey,* 443 U.S. at 3, 99 S.Ct. at 2613. The Court found that the objective facts of a valid arrest and the refusal to submit to breath testing (as stated in a police report), in and of themselves, sufficiently minimized the risk of error. *Id.* at 13–14, 99 S.Ct. at 2618–19. This, combined with the compelling interest in keeping drunk drivers off the road, justified the scheme of immediate license suspension. *Mackey,* 443 U.S. at 17–19, 99 S.Ct. at 2620–22.

The public safety interest threatened in *Mackey* and *Dixon* is simply not present here. The absence of automobile liability insurance does not endanger the public as drunk and habitually unsafe drivers do. The *Bell* Court considered and explicitly rejected finding that mandatory, automobile liability insurance presents the type of exigent circumstances which warrant foregoing a predeprivation hearing. *See Bell,* 402 U.S. at 542, 91 S.Ct. at 1591. Moreover, there are not any objective and reliable facts available to the defendants which tend to reduce the risk of erroneous suspension. Finally, whatever additional burden may be involved in affording every Rhode Island driver facing suspension under R.I.GEN.LAWS § 31–47–9 the opportunity to explain his or her whole side of the story seems negligible, particularly in light of the fact that this may be the Registry's customary practice anyway.

The court is cognizant of the Rhode Island General Assembly's expression of "grave concern that motorists shall be financially able to respond in damages for their negligent acts." R.I.GEN.LAWS § 31–47–1(b). However, the court can not ignore the equally plain statement that only "knowing" violations of R.I.GEN.LAWS § 31–47–9 should be punished with fines, license suspension, and in appropriate cases, imprisonment. While the decision to limit the scope of an administrative hearing to a very narrow issue is unquestionably one of policy, the limitation imposed by R.I.GEN.LAWS § 31–47–10(b) is constitutionally incompatible with the significant protection provided to "innocent" drivers in R.I.GEN.LAWS § 31–47–9.

The ways in which the General Assembly can repair the constitutional defect discussed herein, should it decide to do so, are myriad. The current procedure, however, reading R.I.GEN.LAWS §§ 31–47–9 and 31–47–10(b) together, is patently contrary to the guarantee of due process and cannot stand.

## IV. *Conclusion*

For the foregoing reasons, the Report and Recommendation of the magistrate judge is hereby adopted in part, the plaintiff's motion for summary judgment is granted, and the defendants' motion is denied.

It is so ordered.