**Robert AURELIO, Plaintiff,**

v.

**RHODE ISLAND DEPARTMENT OF ADMINISTRATION, DIVISION OF MOTOR VEHICLES, and Thomas Harrington, in his official capacity as Administrator for the Division of Motor Vehicles, Defendants.**

**C.A. No. 96–534L.**

United States District Court,
D. Rhode Island.

Nov. 13, 1997.

Karen B. Rosenberg, Anne M. Mulready, RI Protection and Advocacy System, Inc., Providence, RI, for Plaintiff.

Thomas A. Palombo, Attorney General's Office, Providence, RI, Priscila A. Pappadia, RI Administrative Adjudication Court Division of Motor Vehicles, Providence, RI, for Defendants.

## MEMORANDUM AND ORDER

LAGUEUX, Chief Judge.

This matter is before the Court on plaintiff's motion for partial summary judgment pursuant to Rule 56 of the Federal Rules of Civil Procedure. At issue is whether or not the Division of Motor Vehicles in the Department of Administration of the State of Rhode Island (hereafter referred to as the "DMV") and its Administrator, Thomas Harrington [1] (together referred to as "defendants") violated the rights of plaintiff, Robert Aurelio (hereafter referred to as "plaintiff" or "Aurelio") in connection with the suspension of his commercial and automobile driver's licenses.

1. Harrington is sometimes referred to as the Registrar of Motor Vehicles because the DMV was called the Registry of Motor Vehicles for many years before its transfer to the Department of Administration from the Executive Department.

In his multi-count complaint, plaintiff alleges that defendants discriminated against him because of his prior history of substance addiction and current psychiatric condition in deciding to suspend his licenses. Specifically, he alleges in Count I that defendants violated the Americans with Disabilities Act (hereafter "ADA"), 42 U.S.C. §§ 12101–12213 (1990). In Count II, plaintiff claims a violation of § 504 of the Rehabilitation Act (" § 504"), 29 U.S.C. § 794. In Counts III and IV he alleges that the actions of defendants deprived him of his procedural due process rights guaranteed by the 14th Amendment to the United States Constitution, made actionable through 42 U.S.C. § 1983 (" § 1983"). The· complaint contains additional counts making claims for relief under Rhode Island statutes and Constitution, but those are not at issue at the present time. Plaintiff has moved for partial summary judgment pursuant to Rule 56 only on Counts I, II, III and IV.

## I. Background

In considering this motion, the Court must view the evidence in the light most favorable to the nonmoving party, here defendants. Viewed in that manner, the facts in this case are as follows:

Plaintiff received a commercial driver's license from the DMV in April 1995. At that time, he also held an automobile driver's license which had been originally issued to him by the DMV some 30 years before. In July of 1995, he applied for a School Bus Operator's Certificate, but in the application he failed to disclose information regarding the following questions:

— Have you ever been hospitalized or treated for any reason or are you on any medication?

— Have you ever been treated for any drug or alcohol–related problem?

— Have you ever been arrested for any drug or alcohol–related offense?

— Have you ever been convicted before any court for any offense?

Plaintiff, in fact, had been convicted of at least two felonies and a number of misde-meanors in the 1960's and 70's and had had a substance abuse problem back then.

In reviewing the application, Michael Vispo of the DMV School Bus Safety section, secured a copy of plaintiff's Bureau of Criminal Identification record and noted his prior convictions, and also learned that he had formerly been a substance abuser. Vispo thus determined that "he had inaccurately and incompletely answered the application questions." Vispo then met with Aurelio who "appeared shifty, incredible and psychologically unstable." In addition, Aurelio related to Vispo an "outlandish story that he was a Presidential bodyguard and his BCI record was due to his covert operations while he was in active military duty and now as a Presidential bodyguard."

On August 7, 1995, Aurelio's application for a School Bus Operator's Certificate was denied for the following reasons:

1. Conviction of a felony;

2. The application [he] submitted contain[ed] inaccurate and incomplete information;

3. Information obtained during the course of the application process brings into question [his] fitness and competency to transport school children; and

4. The certificate would be inimical to the public health, safety and welfare of children.

Plaintiff chose not to appeal the denial of his application for a School Bus Operator's Certificate, but the circumstances surrounding the application triggered a referral to the DMV Operator Control section. On August 15, 1995, the DMV sent Aurelio an Official Notice requiring that he appear for a hearing that would consist of a reexamination road test.

On August 18, 1995, plaintiff appeared and met with Court Review Officer Cheryl DiOrio [2] who observed Aurelio to be "irrational ... unstable psychologically ... [and] distracted." Further, he told DiOrio "that he was and had been a high level spy for the government since his military services in Vi-

---

2. The DMV has a penchant for giving its administrative functionaries imposing titles.

etnam, and that the government had destroyed all records of this and therefore, on paper he was a mere soldier." Based upon the documents before her, as well as the interview and her observations, DiOrio did not administer a reexamination road test but rather issued medical forms to Aurelio to be completed by a psychiatrist and returned to the DMV. He was also told that at a later, unspecified date, the Medical Advisory Board[3] within the DMV would meet to review the information he provided. Aurelio then submitted to a psychiatric evaluation with Gregg M. Etter, M.D., Staff Psychiatrist, East Bay Mental Health Center, Inc. Dr. Etter conducted a psychiatric examination of Aurelio and reported his findings to the DMV's Medical Advisory Board in a writing dated August 31, 1995. Although Dr. Etter's evaluation stated that plaintiff's condition would not

> inhibit or preclude him from driving a motor vehicle, ... he would need to be evaluated more fully to determine the extent of his psychiatric symptomology. Additionally, collateral information sources would be helpful in clarifying his past history as he is not especially forthcoming. If an underlying psychosis were confirmed, antipsychotic medication would be indicated. (emphasis added).

When the Board met on October 11, 1995, plaintiff was not permitted to attend. The Board reviewed DiOrio's comments and Dr. Etter's psychiatric evaluation and then recommended to the DMV, without giving reasons, that Aurelio's commercial and automobile driver's licenses be suspended, subject to further review on or after October, 1996. On October 13, 1995, DiOrio wrote to plaintiff that it had been decided that his driving "privilege be disapproved" with a recommended review on or after October, 1996, if he provided an up-to-date psychiatric evaluation. Aurelio's driver's licenses were then officially suspended by the DMV for reasons of "physical fitness" by a Notice of Action dated October 18, 1995.

Aurelio's request for a post-suspension hearing was granted but that hearing consisted only of a meeting with a second Court Review Officer, Phil Lagoy, on December 27, 1995. Lagoy recommended that since no new medical evidence was submitted, the Board's decision should be upheld. On January 24, 1996, the Board adopted that view and restated its recommendation for suspension of both licenses with a review of eligibility to be conducted on or after October 1996. By letter dated January 25, 1996, the DMV issued a decision that plaintiff's driving "privileges" were "disapproved," with review on or after October 1996, and he was informed of the right to judicial review.

Aurelio appealed the DMV's decision to the Administrative Adjudication Court (AAC). His appeal was denied on March 19, 1996 without explanation by a single judge of that body. He then appealed to the Appeals Panel of the ACC (consisting of three judges). His appeal to the AAC Appeals panel was denied on May 6, 1996 without elaboration. However, in an undated opinion written later, the AAC Appeals Panel reversed itself by stating

> The appellant did receive notice that the DMV's Medical Board would review appellant's record to ascertain whether appellant was eligible for his license under § 31–10–3 (letter of August 18, 1995). However, appellant never received specific reasons once the DMV's Medical Board finished its review and recommended suspension of appellant's licenses. This panel need not address appellant's other arguments.

> Therefore, upon review of the whole record, including the defendant's basis for appeal and the aforementioned standard of review, the Panel finds that the decision of the administrative judge prejudiced the substantial due process rights of the appellant.

> Accordingly, this matter is remanded to the DMV and its Medical Board for further proceedings. The Medical Board shall receive evidence from the appellant and issue written reasons for its recommendation. The Medical Board shall cite to specific evidence which forms the basis

---

3. The Board consists of five physicians with different specialities and two lay persons.

for their recommendations, after which the DMV can review and consider.

In the meantime, Aurelio had filed an action in this Court on March 28, 1996 alleging that the suspension of his licenses was discriminatory and unconstitutional. That action was dismissed by stipulation of the parties when it was agreed that a rehearing by the Medical Review Board on the suspension be held.

Accordingly, Aurelio was informed on August 5, 1996 of his right to attend the Board meeting to be held August 21, 1996. He attended that meeting with counsel, presented his views, and had interaction with Board members. The Board then voted to recommend to the DMV that there be reinstatement of Aurelio's operator's license but a continuance of the suspension of his commercial driver's license.

By letter dated August 26, 1996, Aurelio's operator's license was reinstated but his commercial driver's license remained suspended based on Federal Motor Carrier Safety Regulation 391–41. The above-mentioned Federal Regulation (codified at 49 C.F.R. 391.41(b)(9)) defines a person qualified to drive a commercial motor vehicle as one with "no mental, nervous, organic, or functional disease or psychiatric disorder likely to interfere with his/her ability to drive a commercial motor vehicle safely...." Thereafter, in September 1996, plaintiff Aurelio filed the present civil action.

Plaintiff has now moved for partial summary judgment on Counts I, II, III and IV and has requested that the Court grant him both injunctive and declaratory relief at this time. After hearing oral arguments on the motion for partial summary judgment, the Court took the matter under advisement. This aspect of the case is now in order for decision.

## II.  Standard of Review

Since less than full relief is requested here, in reality, this is a motion pursuant to Rule 56(d) of the Federal Rules of Civil Procedure. Such a motion is separate and distinct from a motion for summary judgment, discussed in Rule 56(c), although the two are often improperly referred to interchangeably. Rule 56(d) "establishes a procedural mechanism whereby a district court can ... with the acquiescence of the parties, narrow the factual issues for trial" *Rivera–Flores v. Puerto Rico Telephone Co.,* 64 F.3d 742, 747 (1st Cir.1995). The rule itself states the following:

> If on motion under this rule judgment is not rendered upon the whole case or for all the relief asked and a trial is necessary, the court at the hearing of the motion, by examining the pleadings and the evidence before it and by interrogating counsel, shall if practicable ascertain what material facts exist without substantial controversy and what material facts are actually and in good faith controverted. It shall thereupon make an order specifying the facts that appear without substantial controversy, including the extent to which the amount of the damages or other relief is not in controversy, and directing such further proceedings in the action as are just. Upon the trial of the action the facts so specified shall be deemed established, and the trial shall be conducted accordingly.

Fed.R.Civ.P. 56(d). The standard for ruling on a Rule 56(d) motion is "identical to that deployed when considering a summary judgment motion under Rule 56(c)." *URI Cogeneration Partners L.P. v. Board of Governors for Higher Education,* 915 F.Supp. 1267, 1279 (D.R.I.1996) (citing *Flanders & Medeiros Inc. v. Bogosian,* 868 F.Supp. 412, 417 (D.R.I.1994)).

Rule 56(c) of the Federal Rules of Civil Procedure sets forth the standard for ruling on summary judgment motions:

> The judgment sought shall be rendered forthwith if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law.

Therefore, the critical inquiry is whether a genuine issue of material fact exists. "Material facts are those 'that might affect the outcome of the suit under the governing law.'" *Morrissey v. Boston Five Cents Savs.*

*Bank,* 54 F.3d 27, 31 (1st Cir.1995) (quoting *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 248, 106 S.Ct. 2505, 2510, 91 L.Ed.2d 202 (1986)). "A dispute as to a material fact is genuine if the evidence is such that a reasonable jury could return a verdict for the non moving party.'" *Id.*

On a motion for summary judgment, the Court must view all evidence and related inferences in the light most favorable to the nonmoving party. *Continental Cas. Co. v. Canadian Universal Ins. Co.,* 924 F.2d 370, 373 (1st Cir.1991). At the summary judgment stage, there is "no room for credibility determinations, no room for the measured weighing of conflicting evidence such as the trial process entails, no room for the judge to superimpose his own ideas of probability and likelihood." *Greenburg v. Puerto Rico Maritime Shipping Auth.,* 835 F.2d 932, 936 (1st Cir.1987). Similarly, "[s]ummary judgment is not appropriate merely because the facts offered by the moving party seem most plausible, or because the opponent is unlikely to prevail at trial." *Gannon v. Narragansett Elec. Co.,* 777 F.Supp. 167, 169 (D.R.I.1991).

As the moving party bears the "initial burden of demonstrating the absence of a genuine issue of material fact," *Martin v. Nannie and the Newborns, Inc.,* 3 F.3d 1410, 1412 (10th Cir.1993), the moving party has a substantial burden to meet. This is particularly true where the moving party is the party who bears the burden of persuasion at trial, as plaintiff does in this case.

## III. Discussion

### A. Americans With Disabilities Act

First, Aurelio seeks partial summary judgment on Count I—his claim based on the ADA. Plaintiff alleges that defendants violated the ADA by basing their decision to suspend his licenses on improper grounds, i.e., his prior substance abuse and present perceived mental incapacity. Plaintiff claims that he would otherwise be qualified to hold both an automobile and a commercial driver's license.

The ADA imposes liability where

a qualified individual with a disability shall, by reason of such disability, be excluded from participation in or be denied the benefits of the services, programs, or activities of a public entity, or be subjected to discrimination by any such entity.

42 U.S.C. § 12132. In order for plaintiff to prevail under the ADA in this case, plaintiff must prove that: (1)he is a "qualified individual"; (2)he has a disability; and (3) his disability was the basis for discriminatory action by a public entity. *Rosamond v. Pennaco Hosiery, Inc.,* 942 F.Supp. 279, 283 (N.D.Miss.1996), citing *Stradley v. Lafourche Communications, Inc.,* 869 F.Supp. 442 (E.D.La.1994). Plaintiff contends that he has proved all three of these elements. This Court need not evaluate the validity of this assertion, for it need only determine if evidence was presented which raises a genuine issue of material fact on any of these elements. *Id.* at 284.

From the materials submitted, it is clear to the Court that there are material facts in dispute as to whether defendants, in fact, regarded plaintiff as disabled and whether this perceived disability was the basis for discriminatory action on their part. The record is unclear as to the grounds upon which the DMV and the Medical Advisory Board based their decisions to suspend Aurelio's licenses. It must be determined factually whether the standards the DMV employed to evaluate Aurelio's fitness deviated from the standards that are generally applied in evaluating an applicant's fitness for licensure. Such determinations must be made by the trier of fact, rather than be decided at the summary judgment stage, before liability under the ADA can be assessed. Therefore, plaintiff's motion for partial summary judgment on Count I is denied.

### B. Rehabilitation Act

Plaintiff also moves for partial summary judgment on Count II which alleges that the actions of defendants in suspending his licenses were discriminatory and thus violated § 504 of the Rehabilitation Act. The analysis under the Rehabilitation Act is much the same as under the ADA. § 504 of the

Rehabilitation Act provides in relevant part that

> no otherwise qualified individual ... shall solely by reason of her or his disability ... be excluded from the participation in, be denied the benefits of, or be subjected to discrimination under any program or activity receiving Federal financial assistance....

29 U.S.C.A. § 794(a). As with the ADA, in order for liability to attach under this section, plaintiff must prove that he is an otherwise qualified individual, that he has a disability and that he was discriminated against because of this disability. *Leary v. Dalton*, 58 F.3d 748, 752–753 (1st Cir.1995). Plaintiff alleges that defendants based their decision to revoke his licenses upon his status as a prior substance abuser. While it is clear that alcoholism is a disability within the meaning of the Act, *See, e.g., Cook v. State of R.I., Department of Mental Health, Retardation and Hospitals,* 10 F.3d 17, 24 (1st Cir. 1993), it is not readily apparent from the record that the Board's recommendation to suspend the licenses was based solely on Aurelio's past alcoholic problems. Questions remain unanswered in the record as to the dispositive grounds for the suspension, leaving material issues of fact to be determined at trial.

Plaintiff's contentions also fail because the record does not establish that disregarding Aurelio's past substance abuse, he nonetheless can be considered a "qualified individual," fit for commercial or automobile licensure, given his alleged psychiatric condition. Additional factual determinations must be made regarding the standards that the DMV normally employs to evaluate an applicant's fitness for licensure compared to the standards applied to Aurelio. Inasmuch as there are material issues of fact in dispute which are best resolved by the trier of fact, partial summary disposition is presently inappropriate and plaintiff's motion for summary judgment on Count II, must be denied.

## C. Due Process Clause and § 1983

Aurelio also moves for partial summary judgment on Counts III and IV. He claims that the suspension of his licenses violated his constitutionally protected due process rights, actionable under § 1983. For the reasons which follow, Aurelio's motion for partial summary judgment is granted in part and denied in part with respect to Counts III and IV.

■ The Fourteenth Amendment to the United States Constitution provides that "no state may deprive any person of life, liberty or property without due process of law...." U.S. Const. Amend. XIV. A person may bring an action for such deprivations under 42 U.S.C. § 1983, which reads, in pertinent part:

> Every person who, under color of any statute, ordinance, regulation, custom or usage, of any State or Territory or the District of Columbia, subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress.

42 U.S.C. § 1983 does not, therefore, create substantive rights but merely provides a remedy for the violation of rights that are found in the Constitution or laws of the United States. *See, e.g. West v. Town of Bristol,* 712 F.Supp. 269, 274 (D.R.I.1989) (citing *Chapman v. Houston Welfare Rights Org.,* 441 U.S. 600, 99 S.Ct. 1905, 60 L.Ed.2d 508 (1979)); *Martinez v. State of Cal.,* 444 U.S. 277, 100 S.Ct. 553, 62 L.Ed.2d 481 (1980).

■ In *Will v. Michigan Dept. of State Police,* 491 U.S. 58, 109 S.Ct. 2304, 105 L.Ed.2d 45 (1989), the United States Supreme Court made clear that states are not to be subjected to suits in federal court for § 1983 claims as neither states nor their officials acting in their official capacities are to be considered "persons" under § 1983. However, a state official may be sued in his or her official capacity and be subject to injunctive relief, as opposed to money damages, under § 1983. Under such circumstances, a state official is a person under § 1983 because "official-capacity actions for

prospective relief are not treated as actions against the state." *Id.* at 71 n. 10, 109 S.Ct. at 2312 n. 10. (quoting *Kentucky v. Graham,* 473 U.S. 159, 167 n. 14, 105 S.Ct. 3099, 3106 n. 14, 87 L.Ed.2d 114 (1985)). A claim for injunctive relief against a state official is similarly not barred by the Eleventh Amendment to the U.S. Constitution. *Graham,* 473 U.S. at 167 n. 14, 105 S.Ct. at 3106 n. 14, 87 L.Ed.2d 114 (1985).

In this motion for partial summary judgment, plaintiff is only asking the Court to grant injunctive and declaratory relief while he holds his claim for compensatory monetary relief in abeyance.[4] However, it is clear that plaintiff is not entitled to prospective injunctive relief since he received all the process that was due him in August of 1996. The most that he is entitled to is a declaration that his procedural due process rights were violated during the period October 18, 1995, when his licenses were suspended, until August 1996, when he received an appropriate hearing and his operator's license was reinstated. This Court, therefore, must proceed to determine if plaintiff is entitled to such a declaration.

There are two elements which must be proved to sustain a cause of action under § 1983. Plaintiff must prove that (i) the conduct complained of was committed by a person acting under color of state law and (ii) that such conduct deprived plaintiff of rights, privileges, or immunities secured by the Constitution or laws of the United States. *Wojcik v. Town of North Smithfield,* 874 F.Supp. 508, 517 (D.R.I.1995) (citing *Gutierrez–Rodriguez v. Cartagena,* 882 F.2d 553, 559 (1st Cir.1989)).

Defendants were obviously acting under color of state law. The actions of defendants constitute state action as they exercised power "possessed by virtue of state law and made possible only because the wrongdoer is clothed with the authority of state law." *Forbes v. Rhode Island Brotherhood of Correctional Officers,* 923 F.Supp. 315, 321 (D.R.I.1996) (citing *West v. Atkins,* 487 U.S. 42, 49, 108 S.Ct. 2250, 2255, 101

L.Ed.2d 40 (1988)). The State controls the issuance and revocation of automobile and commercial licenses through the DMV and the power exercised by Harrington in ordering the suspension of those licenses was only made possible because of his position as a state official.

The more complicated inquiry, however, is whether or not the actions of defendants deprived Aurelio of rights, privileges or immunities secured by the Constitution in this case. It is clear that the only constitutional right involved in this case is procedural due process.

Fourteenth Amendment "due process" requires that notice and opportunity to be heard precede any significant deprivation of a person's property or liberty interest by the state. *Lee v. State of Rhode Island,* 942 F.Supp. 750, 753 (D.R.I.1996) (citing *Cleveland Bd. of Educ. v. Loudermill,* 470 U.S. 532, 542, 105 S.Ct. 1487, 1493, 84 L.Ed.2d 494 (1985)). Procedural due process guarantees fair procedure, not "perfect, error-free determinations." Id. at 754 (citing *Mackey v. Montrym,* 443 U.S. 1, 12, 99 S.Ct. 2612, 2618, 61 L.Ed.2d 321 (1979)). Therefore, "[t]he focus of a procedural due process claim is not on whether the underlying state action itself was erroneous but on the manner in which the state acted." *Id.* (citing *Amsden v. Moran,* 904 F.2d 748, 753 (1st Cir.1990).) As it is clearly established that a person has a significant property interest in a driver's license, procedural due process must be followed before the license can be suspended or revoked. *See Lee,* 942 F.Supp. at 754; *Bell v. Burson,* 402 U.S. 535, 539, 91 S.Ct. 1586, 1589, 29 L.Ed.2d 90 (1971); *Dixon v. Love,* 431 U.S. 105, 112, 97 S.Ct. 1723, 1727, 52 L.Ed.2d 172 (1977).

The specific process due, however, varies from case to case and depends on the importance of the interests involved and the circumstances under which the deprivation occurs. *Walters v. National Ass'n of Radiation Survivors,* 473 U.S. 305, 320, 105 S.Ct. 3180, 3188–89, 87 L.Ed.2d 220 (1985). The factors to be considered in evaluating

---

4. Plaintiff should know by now that his claim for damages under § 1983 is not viable because he has not sued any DMV officials in their individual capacities.

the processes required by the Due Process Clause include the nature of the private interest involved, the risk of erroneous deprivation under the existing procedures, the feasibility of alternative procedures and the government's interest in maintaining the existing procedures. *Lee,* 942 F.Supp. at 755 (citing *Mathews v. Eldridge,* 424 U.S. 319, 335, 96 S.Ct. 893, 903, 47 L.Ed.2d 18 (1976); *Walters,* 473 U.S. at 321, 105 S.Ct. at 3189). Defendants contend that adequate precautions were taken to guarantee that Aurelio received due process before his licenses were suspended in October, 1995. The record indicates that such a contention is clearly without merit.

A driver's license is a significant and considerable private interest, impacting one's ability to earn a living and enjoy the liberty of travel, among other things. *See Lee,* 942 F.Supp. at 754. Additionally, the procedures employed by the DMV in this instance lend themselves to the possibility of erroneous deprivation. Plaintiff argues that the initial hearing before the Medical Advisory Board, at which plaintiff was not present, was flawed because there was no opportunity for the Board to evaluate plaintiff personally and no opportunity for plaintiff to confront the Board and discuss Dr. Etter's evaluation before the decision to suspend his licenses was made. The Court agrees. It is clear that the risk of an erroneous decision was enhanced by the Board's reliance upon the Court Review Officer's observations regarding Aurelio's psychiatric condition despite that Officer's probable lack of any formal psychiatric training, and the obvious disregard of Dr. Etter's evaluation in whole or in part.

Defendants maintain that Aurelio was given an opportunity to contest or respond to the Board's decision to suspend his licenses. This simply is not so. Aurelio was never made aware of the basis upon which he was being evaluated or the specific reasons for which his licenses were suspended.

Defendants also assert that to employ alternative procedures would not be feasible. The Court disagrees. It would not have been fiscally or administratively unreasonable for the Board to allow Aurelio to attend the initial Board hearing and follow the procedures later ordered by the ACC Panel. What stands out in this case is when the Board allowed Aurelio's presence at the August 1996 review, the result was a reinstatement of his operator's license.

▮▮▮▮ The most basic component of procedural due process is that an individual must receive adequate notice and a "meaningful opportunity for a hearing" before a deprivation of a significant property interest can occur. *Lee,* 942 F.Supp. at 754 (citing *Armstrong v. Manzo,* 380 U.S. 545, 552, 85 S.Ct. 1187, 1191, 14 L.Ed.2d 62 (1965)). Before the October 1995 suspension of Aurelio's licenses there was no "notice" of the action that might be taken by the Board and no "meaningful opportunity for a hearing."

Defendants argue that the alleged fraudulent application by plaintiff for the School Bus Certificate, combined with his original meeting with Court Review Officer DiOrio in August 1995 provided him with adequate notice and hearing. Such a contention is clearly without substance. There is no correlation between the alleged fraudulent application which justified denial of the Certificate and the subsequent psychiatric inquiry made by the DMV. The misinformation on the application for the Certificate resulted in a legitimate, and most importantly, uncontested, denial of that Certificate. However, there was no notice to plaintiff that said denial would cause further inquiry into his fitness for general licensure. Defendants' assertion that the alleged fraudulent application for the School Bus Certificate should have made Aurelio aware that his driver's licenses would be subjected to review, particularly as his last traffic violation had occurred over 20 years before, is simply untenable.

Defendants ask the Court to classify plaintiff's August 1995 meeting with Officer DiOrio as a "hearing." Aurelio went to that meeting expecting to take a road test. Officer DiOrio decided that Aurelio should instead submit to psychiatric evaluation, refused to give him a road test and told him the Medical Advisory Board would review the results at a later, unspecified date. This was not a "hearing" in any sense of the word. DiOrio provided the Board with gross generaliza-

tions and stereotypes and plaintiff had no way of contesting those assertions before the Board. No matter how this case is viewed, it is clear that plaintiff was not afforded a pre-deprivation hearing as required by due process before his licenses were suspended.

▪ Defendants further assert that even if there was a due process violation originally, it was remedied by the post-suspension procedures made available to plaintiff. That argument misses the point entirely. It was a pre-deprivation hearing that plaintiff was constitutionally entitled to, not post mortems. Although Aurelio was granted a post-suspension hearing with a second Court Review Officer, this in and of itself provided no due process protection. The Officer recommended maintaining the suspension as no new evidence had been presented. Apparently Aurelio was expected to present evidence at this meeting as to why the suspension was unwarranted and convince the Officer that the licenses should be reinstated. It is difficult for the Court to comprehend how Aurelio could have come to this meeting prepared to defend his position and bring new evidence to light when the only thing he had been told regarding the grounds for suspension was that it was for "physical fitness" reasons.

The Court in *Lee,* 942 F.Supp. at 755 (citing *Loudermill,* 470 U.S. at 547, 105 S.Ct. at 1496) pointed out that "part and parcel of having a 'meaningful' hearing is having the 'opportunity to respond' to every essential element of the offense alleged." Plaintiff had no such opportunity because he did not have notice of what the offending behavior was. In short, the post-suspension hearing before the so-called hearing officer did not even meet minimal "due process" requirements.

Defendants also contend that Aurelio's appeal before the AAC on March 12, 1996, provided a post-suspension remedy. This contention is also without merit. The AAC's review was limited to the administrative record but the DMV did not provide the AAC with a record of the Board's or Officer's review. The AAC's evaluation was not based on any information provided by Aurelio nor was he able to question or contest the grounds for the suspension. Aurelio was still unaware of the basis for the suspension and incapable of formulating relevant arguments. Essentially, he was provided no opportunity to question the Board's decision.

▪ There can be situations where a state is justified in issuing a summary suspension of a driver's license without a hearing, but this is not one of them. Those situations are restricted to exigent circumstances, where allowing one to retain a license poses imminent, serious safety risks to the public as determined by objectively ascertainable standards. *Lee,* 942 F.Supp. at 756. Aurelio had held a driver's license for 30 years, with no traffic violation for over 20 years. Defendants have never asserted in this case that he posed an immediate and grave risk to public safety by being on the road. The long and short of it is that the DMV deprived Aurelio of his licenses for a period of time without adequate notice and a meaningful hearing and in so doing, violated his procedural due process rights.

The suspension of Aurelio's licenses was illegal and in violation of his constitutional rights until August, 1996 when he finally was granted a meaningful hearing before the Medical Advisory Board. As a result of this hearing, Aurelio's automobile driver's license was reinstated but the Board reaffirmed its recommendation that his commercial driver's license be suspended.

Both Aurelio and his attorney were present at this hearing in August, 1996 and were given the opportunity to ask and respond to questions of the Board and to ascertain the reasons for his suspension. Whether the Board and the DMV were legally correct in continuing the suspension of plaintiff's commercial license will be determined when this case is reached on its merits.

It suffices to say now that during the period of time from October 18, 1995 to August 27, 1996, Aurelio's licenses were suspended by the DMV in violation of his procedural due process rights. Defendants, thus, committed a violation of § 1983 for that period of time. As previously noted, plaintiff is not now entitled to injunctive relief because the violation has ceased. All that plaintiff is entitled to presently is a declaration by this

Court that the suspension of plaintiff's commercial and operator's licenses was in violation of his procedural due process rights from October 18, 1995 to August 27, 1996, and that constituted a violation of 42 U.S.C. § 1983.

## IV. Conclusion

For the foregoing reasons, plaintiff's motion for partial summary judgment on Count I and II is denied. Plaintiff's motion for partial summary judgment on Counts III and IV is granted only to the extent of the declaration stated above. No judgments will enter in this case until all claims are resolved.

It is so ordered.